UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOWARD ALLY, ) | 1:06-CV-00414 AWI JMD HC |
| Petitioner, ) | |
| ) | FINDINGS AND RECOMMENDATION |
| v. ) | REGARDING PETITION FOR WRIT OF |
| ) | HABEAS CORPUS |
| KATHY MENDOZA-POWERS, ) | |
| Respondent. ) | |

Petitioner Doward Ally ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of California Department of Corrections and Rehabilitation pursuant to a judgment of the Los Angeles County Superior Court. (Pet. at 1; Answer at 2.) Petitioner plead guilty to second degree murder (Cal. Penal Code § 187) with a firearm use enhancement (Cal. Penal Code § 12022.5). (Pet. at 11). Petitioner is serving a sentence of seventeen years-to-life.

On June 16, 2004, Petitioner appeared before the California Board of Parole Hearings ("BPH" or "Board") for a parole consideration hearing. The Board denied Petitioner parole. (Answer at 2).

Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court challenging the BPH's decision. (Answer at 3). The Superior Court denied the petition in a reasoned opinion on March 7, 2005. (Id.)

On July 15, 2005, Petitioner filed a petition for writ of habeas corpus before the California Court of Appeal. (Pet. at 5; Answer at 4). The appellate court summarily denied the petition on July

1   26, 2005.  (Answer at 4).

2        On October 21, 2005, Petitioner filed an application with the California Supreme Court to
3   review the Court of Appeal's decision.  (Answer at 2).  The California Supreme Court summarily
4   denied Petitioner's application on November 30, 2005.  (Pet. at 2; Answer at 2.)

5        On March 22, 2006, Petitioner then filed the instant federal petition for writ of habeas corpus
6   with the Central District of California.  (Pet. at 1).  On April 11, 2006, the petition was transferred to
7   this Court, pursuant to 28 U.S.C. § 2241.  The petition raises three grounds for relief: 1) the Board's
8   conclusion, that Petitioner posed an unreasonable risk of danger to public safety, was an abuse of
9   discretion as the decision was unsupported by any relevant or reliable evidence; 2) the Board's
10  decision denies Petitioner due process of the law by continuing to rely on the commitment offense to
11  deny Petitioner parole; 3) the Board's denial of parole effectively nullifies Petitioner's original plea
12  agreement by recasting the plea of second degree murder to the higher first degree murder category.

13       On June 1, 2007, Respondent filed an answer to the petition.

14       On June 19, 2007, Petitioner filed a traverse to Respondent's answer.

**DISCUSSION**

16  **I.   Jurisdiction**

17       A person in custody pursuant to the judgment of a state court may petition a district court for
18  relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or
19  treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529
20  U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by
21  the U.S. Constitution.  While Petitioner's underlying conviction arose in the Los Angeles County
22  Superior Court, the case was properly transferred to the Eastern District of California pursuant to 28
23  U.S.C. § 2241.  Accordingly, the Court has jurisdiction over the action.

24       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of
25  1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's
26  enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 326-327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499
27  (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting <u>Drinkard v. Johnson</u>, 97
28  F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by*

1   Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The
2   instant petition was filed on August 10, 2005 and is consequently governed by the provisions of the
3   AEDPA, which became effective April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

4   **II.     Standard of Review**

5   **A.     AEDPA Standard of Review**

6   While Petitioner is not challenging the underlying state court conviction, Petitioner is in
7   custody of the California Department of Corrections and Rehabilitation pursuant to a state court
8   judgment.  Thus, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition
9   since he satisfies the threshold requirement of being in custody pursuant to a state court judgment.
10  Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) ("Section 2254
11  'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court
12  judgment, even when the petitioner is not challenging his underlying state court conviction'"
13  (quoting White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004)).

14  Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas
15  corpus "may be granted only if he demonstrates that the state court decision denying relief was
16  "contrary to, or involved an unreasonable application of, clearly established Federal law, as
17  determined by the Supreme Court of the United States.""  Irons v. Carey, 505 F.3d 846, 850 (9th Cir.
18  2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

19  As a threshold matter, this Court must "first decide what constitutes 'clearly established
20  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71
21  (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this
22  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of
23  the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412).  "In other
24  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
25  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

26  Finally, this Court must consider whether the state court's decision was "contrary to, or
27  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,
28  (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant

the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859, 123 S.Ct. 231 (2002), *rehearing denied*, 537 U.S. 1149, 123 S.Ct. 955 (2003).

**B.     Standard Governing Parole Release Determinations**

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Sass, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, where a state's statutory scheme for parole contains mandatory language, the presumption exist "that parole release will be granted' when or

unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)). California Penal Code section 3041 contains the requisite mandatory language, thus vesting in California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Irons, 505 F.3d at 850; see McQuillion, 306 F.3d at 903; see also Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). Even a prisoner who has not yet been granted a parole date has a constitutionally protected liberty interest in a parole date. Sass, 461 F.3d at 1123.

Notwithstanding a prisoner's liberty interest in a parole date, a parole release determination is not subject to all of the due process protections of an adversarial proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections as demanded by the particular situations). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is entitled to receive advance written notice of a hearing. Pedro, 825 F.2d at 1399. Additionally, the inmate must be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole." Greenholtz, 442 U.S. at 16.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" Sass, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations. Irons, 505 F.3d at 851. The "some evidence" standard as applied to parole determinations is clearly established Federal law, pursuant to the decisions of the Supreme Court. Id.; Sass, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest

1    without imposing undue administrative burdens or threatening institutional interests.  <u>Superintendent</u>

2    <u>v. Hill</u>, 472 U.S. 445, 455 (1985).  In assessing "whether a state parole board's suitability

3    determination was supported by 'some evidence' in a habeas case, our analysis is framed by the

4    statutes and regulations governing parole suitability determinations in the relevant state."  <u>Irons</u>, 505

5    F.3d at 851.  Consequently, the Court must look to California law and review the record.  However,

6    in reviewing the record and determining whether the "some evidence" standard is met, the Court

7    need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the

8    evidence.  <u>Sass</u>, 461 F.3d at 1128 (citing <u>Hill</u>, 472 U.S. at 455-456).  Rather, the relevant inquiry is

9    whether there is any evidence in the record that could support the BPH's decision.  <u>Sass</u>, 461 F.3d at

10   1128.

11          California law provides that after an eligible life prisoner has served the minimum term of

12   confinement required by statute, the BPH "shall set a release date unless it determines that the

13   gravity of the current convicted offense or offenses, or the timing and gravity of current or past

14   convicted offense or offenses, is such that consideration of the public safety requires a more lengthy

15   period of incarceration for" the prisoner.  Cal. Penal Code § 3041(b).  "[I]f in the judgment of the

16   panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the

17   prisoner must be found unsuitable and denied parole.  Cal. Code Regs., § 2402(a); <i>see</i> <u>In re</u>

18   <u>Dannenberg</u>, 34 Cal.4th 1061, 1078, 1080 (Cal. 2005).  The BPH decides whether a prisoner is too

19   dangerous to be suitable for parole by applying factors set forth in the California Code of

20   Regulations.  <i>See</i> 15 Cal. Code Regs., tit. 15 § 2402; <u>Irons</u>, 505 F.3d at 851-852; <u>Biggs</u>, 334 F.3d at

21   915-916.  The regulation's criteria states that:

22          All relevant, reliable information available to the panel shall be considered in
             determining suitability for parole.  Such information shall include the circumstances
23           of the prisoner's social history; past and present mental state; past criminal history,
             including involvement in other criminal misconduct which is reliably documented;
24           the base and other commitment offenses, including behavior before, during and after
             the crime; past and present attitude toward the crime; any conditions of treatment or
25           control, including the use of special conditions under which the prisoner may safely
             be released to the community; and any other information which bears on the
26           prisoner's suitability for release.  Circumstance which taken alone may not firmly
             establish unsuitability for parole may contribute to a pattern which results in a finding
27           of unsuitability.

28   15 Cal. Code Regs., tit. 15, § 2402(b)

Factors supporting a finding of unsuitability for parole include (1) the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; (2) a record, prior to incarceration for the underlying offense, of violence; (3) a history of unstable relationships with others; (4) sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the underlying offense; (6) serious misconduct in jail. Cal. Code Regs., tit. 15, § 2402 (c)(1)-(6); also In re Shaputis, 82 Cal.Rptr.3d 213, 225 n. 14 (Cal. 2008) (holding that "some evidence" standard was met where Petitioner failed to gain insight into his previous violent behavior and to take responsibility for the commitment offense).

### III. Review of Petitioner's Claims

#### A. Ground One

Petitioner's first contends that there was no relevant or material evidence to support the BPH's denial of parole or their conclusion that Petitioner currently posed an unreasonable risk of danger to public safety. (Pet. at 6). Petitioner further argues that the BPH was obligated to use a preponderance of the evidence standard and that the BPH failed to apply any standard of proof in denying Petitioner parole. (Id). Petitioner additionally objects to this Court's deference to the "some evidence" standard, arguing for heightened judicial scrutiny. (Id.)

Despite Petitioner's contention that the BPH bore the burden of finding by a preponderance of the evidence that the Petitioner was unsuitable for parole, Petitioner cites to no legal authority for this specific proposition. Petitioner cites to the California Code of Regulations definition for "good cause" yet this definition by itself does not require the Board to use such a standard for parole determinations. More importantly, this Court's sole inquiry is whether the state court's decision was contrary to or an unreasonable application of clearly established Federal law. 28 U.S.C. § 2254 (d). Clearly established Federal law requires that a reviewing court evaluate the BPH's decision using the "some evidence" standard. Irons, 505 F.3d at 851; Sass, 461 F.3d at 1128-1129. Thus, the dispositive inquiry before this Court is whether there was some evidence to support the BPH's determination that Petitioner posed a current unreasonable risk to the public safety.

The BPH conclusion rested on five factors: 1) the circumstances of the commitment offense; 2) Petitioner lacked insight into his motivations for the crime 3) insufficient participation in self-help

programs; 4) Petitioner ignored previous recommendations by the BPH that he participate in additional vocational and self-help programs; 5) the opposition by the District Attorney and Los Angeles Police Department to a finding of parole suitability. (Pet., Ex. B at 62-69). In the last reasoned decision in this case, the Los Angeles Superior Court found that the record contained "some evidence" to support the Board's ultimate conclusion that Petitioner was unsuitable for parole. (Resp't. Ex. 5). The Superior Court specifically discussed the Board's finding that Petitioner lacked insight and the circumstances of the commitment offense itself as "some evidence" that Petitioner was still a danger to the public safety.

As the California Supreme Court recently stated, "the Board or Governor may base a denial-of-parole decision upon the circumstances of the offense, or upon other immutable facts such as an inmate's criminal history, but some evidence will support such a reliance *only* if those facts support the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety." In re Lawrence, 82 Cal.Rptr.3d 169, 198 (Cal. 2008) (holding that the relevant inquiry for a reviewing court is whether some evidence supports the decision that the inmate constitutes a current danger to the public safety, not merely whether some evidence confirms the existence of the BPH's factual findings). Here, the Board relied on the commitment offense as one of the circumstances establishing Petitioner's unsuitability for parole–specifically noting the inexplicable motive and disregard for human suffering. (Cal. Code Regs., tit. 15, §§ 2402 (c)(1)(E) and (D)). The Superior Court also relied on the circumstances of the commitment offense in finding that there was "some evidence" supporting the BPH's conclusion.

Consistent with Lawrence, though, this immutable factor does evidence that petitioner continues to pose an unreasonable risk of danger to public safety. It was the inexplicable motive for the offense, combined with Petitioner's lack of understanding, that lead the BPH to conclude that the risk that Petitioner would commit a similar offense was still very present. The BPH specifically stated that "the lack of insight into why he did it, for whatever reason he did it, causes us to believe that until he deals with why he did this crime, why he would go and shoot a man he did not know who had done nothing to him personally, *in such a cold-blooded fashion*, until he deals with why he did that there's a risk he could do it again." (Pet., Ex. B at 65) (emphasis added).

Petitioner attacks this facet of the BPH's conclusion as lacking reliable or relevant evidence, basing his argument on the findings of a 1999 psychiatric evaluation. (Pet. Ex. G). The evaluation found that Petitioner had already delved into the causative factors of his crime and gained insight into his commission of the underlying offense. (Id.). However, Petitioner's own statements during the hearing contradicts this assertion. When the BPH inquired about why he shot the victim, Petitioner responded by stating, "to this day I still don't understand why I pulled the gun. It was a reaction. I was nervous." (Pet., Ex. B at 15). Additionally, Petitioner when asked why he brought a loaded gun to the location if did not intend to use the weapon responded by stating, "I can't even explain that part." (Id. at 17)

The evidence taken as a whole is sufficient to show that it the BPH was presented with "some evidence" that Petitioner posed a current unreasonable danger to public safety. Thus, the state court's conclusions, that "some evidence" existed to support the Board's conclusion were reasonable.

**B.     Ground Two**

Petitioner's second ground for relief is that the BPH's continued reliance on the underlying offense violates his right to due process of the law. Regulations governing parole determinations permit the BPH to consider the underlying offense as one of the factors towards unsuitability for parole. *See* Cal. Code Regs., tit. 15, § 2402. The Ninth Circuit has expressed reservations about using immutable factors, such as the circumstances of the commitment offense, as "some evidence" to support a determination of current dangerousness to the public safety. Irons, 505 F.3d at 853-854 (holding that reliance on circumstances of the commitment offense by itself is permissible where the denial of parole was prior to the prisoner serving their minimum sentence); Biggs, 334 F.3d at 916-917; Sass, 461 F.3d at 1135 (Reinhardt, J., dissenting). Recently, the California Supreme Court has held that immutable and unchangeable circumstances of the offense did not constitute "some evidence" where it was the sole factor relied upon to deny parole. In re Lawrence, 82 Cal.Rptr.3d at 202-203.

Here, the BPH relied on the commitment offense as one of *several* factors for its conclusion that Petitioner was unsuitable for parole. The Superior Court relied on the circumstances of the

offense as one of two stated reasons for finding that "some evidence" supported the BPH's conclusion. Consequently, this instant case is distinguishable from Lawrence, in that the BPH's determination that Petitioner posed a current unreasonable danger to the public safety was not solely based on immutable factors. Rather, as noted in the previous section, the BPH's determination was based on several additional considerations–including Petitioner's insufficient participation in self-help programming, Petitioner's lack of insight as to why he committed the underlying offense, and the opposition by the District Attorney's Office and Police Department. As it was not solely based on immutable factors, the BPH's decision to deny Petitioner parole did not violate his right to due process. Therefore, the Superior Court's determination, that Petitioner's due process rights were not violated by the BPH reliance on the circumstances of the commitment offense, was not unreasonable.

**C.    Ground Three: Nullification of Plea Agreement Claim**

In his third ground for relief, Petitioner contends that BPH's denial of parole nullified his plea of second degree murder. Petitioner alleges that the parole board repeated denial of parole based "primarily and interminably on the commitment offense" would alter Petitioner's sentence to the higher first degree murder category.

The Los Angeles County Superior Court rejected Petitioner's claim without explanation. (Resp't. Ex. 5). As a result of the unexplained rejection, this Court conducts an independent review of the record to decide whether the state court's decision was objectively reasonable. Himes v. Thompson, 336 F.3d 848, 853 (th Cir. 2003). Having done so, the Court concludes that there was no breach of the plea agreement as there was no promise that Petitioner would be found suitable for parole and paroled on a particular date. Cf. Brown v. Poole, 337 F.3d 1155 (9th Cir. 2003) (finding that prosecutor's specifically stated concession, that defendant would be released after serving half the minimum term if she had a clear disciplinary record in prison, in exchange for a plea of second degree murder, created a contractual obligation that was violated when defendant was repeatedly denied parole despite her clear disciplinary record).

"Plea agreements are contractual in nature and are measured by contract law standards." Brown, 337 F.3d at 1159 (quoting United States v. De La Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993)). A criminal defendant's right to due process entitles him/her to enforce the terms of a plea agreement.

1  Santobello v. New York, 404 U.S. 257, 261-262 (1971).  However, there is no evidence in this case,
2  and Petitioner does not allege, that the District Attorney's Office promised that Petitioner would be
3  released on parole after a serving a certain amount of time or on a certain date.  Rather, Petitioner's
4  plea deal made him *eligible* for release after seventeen years but included a maximum term of life
5  imprisonment.  Eligibility for parole does not mean suitability and under state law, Petitioner must be
6  found suitable for parole before his term and release date are set.  Therefore, Petitioner has received
7  the parole considerations that he was entitled to under his plea agreement and sentence–namely
8  parole determinations hearing occurring less than seventeen years after Petitioner was sentenced.
9  Furthermore, as noted above, the BPH's denial of parole in Petitioner's case was not based solely on
10 the immutable circumstances of the commitment offense.  Consequently, Petitioner's plea agreement
11 has not been violated or nullified by the BPH's denial of parole on June 16, 2004.

## RECOMMENDATION

13         Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be
14 DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for
15 Respondent.

16         This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United
17 States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304
18 of the Local Rules of Practice for the United States District Court, Eastern District of California.
19 Within thirty (30) days after being served with a copy, any party may file written objections with the
20 court and serve a copy on all parties.  Such a document should be captioned "Objections to
21 Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and
22 filed within ten (10) court days (plus three days if served by mail) after service of the objections.
23 The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)©.  The
24 parties are advised that failure to file objections within the specified time may waive the right to
25 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
26 IT IS SO ORDERED.

27 **Dated:     September 19, 2008                    /s/ John M. Dixon**
                                            UNITED STATES MAGISTRATE JUDGE
28